FILED

2021 JUL 12 PM 2:51



# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| JENNY BROWN and CARMEN MONTIJO, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Misc. Case No. 3:21-mc-39-TJC-JBT ) |
| v. | ) ) |
| ENHANCED RECOVERY COMPANY LLC, | ) ) ) |
| Defendant. | ) ) |
| JENNY BROWN AND CARMEN MONTIJO individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) Underlying action pending in the U.S. ) District Court for the Central District ) of California, Western Division |
| v. | ) ) |
| DIRECTV, LLC | ) Case No. 2:13-cv-01170-DMG-E ) |
| Defendant. | ) ) ) |

**MOTION TO COMPEL COMPLIANCE WITH
SUBPOENAS FOR DOCUMENTS ISSUED BY UNITED STATES
<u>DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA</u>**

Plaintiffs Jenny Brown and Carmen Montijo, by and through their undersigned attorneys pursuant to Fed. R. Civ. P. 45, move the Court for an order compelling Enhanced Recovery Company, LLC ("ERC"), to comply with records

1

subpoenas issued to it by the United States District Court for the Central District of California in a class action pending in that district styled *Brown v. DIRECTV, LLC*, No. 2:13-cv-01170 (C.D. Cal.) (the "DIRECTV Action"), which subpoenas were to be complied with in this District. In support of this Motion, Plaintiffs state as follows:

## I. Introduction

This Motion involves a limited and targeted request for records in the exclusive possession, custody, or control of ERC that ERC now refuses to produce after previously informing Plaintiffs' Counsel that it would produce them. The DIRECTV Action, a TCPA class action which was certified by the Central District of California in 2019, involves debt collection calls made by DIRECTV's vendors (of which ERC is one) to non-customers who owed no debt to DIRECTV. Plaintiffs seek three categories of records from ERC: (1) call records, including information regarding the individual whom ERC and DIRECTV were attempting to reach with the call, which is necessary to identify the violations at issue; (2) identification codes (such as "wrong number") and call notes regarding those calls, which also go directly to establishing which calls went to non-customers; and (3) communications in which ERC may have informed DIRECTV that some of the calls being made on DIRECTV's behalf were reaching non-customers. Plaintiffs limited these requests to be laser-focused on the records relevant to the DIRECTV action to reduce the

compliance burden on ERC.

There is no question that these records are relevant and discoverable. Indeed, the signature case establishing the relevance of such records also involved ERC. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012). Indeed, ERC's counsel promised to produce them, but has not done so. The records should be produced.

## II.   Factual and Procedural Background

In the underlying DIRECTV Action, Plaintiffs allege that DIRECTV, LLC ("DIRECTV") engaged in a widespread program of retaining third-party agencies to collect debts allegedly owed to DIRECTV. One of those third-party entities is ERC, who has been retained by DIRECTV from June 13, 2012 to the present to collect debts. Although the intent of those calls was to reach former or current customers of DIRECTV, Plaintiffs allege that many of the calls were made to non-customers, including Plaintiffs themselves. Plaintiffs allege these calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1), which was enacted in 1991 in response to widespread public outrage about the proliferation of robocalls that Congress rightly regarded as an invasion of privacy. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371-72 (2012). In the years since, as everyone with a cell phone knows, the problem has only gotten worse. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am.*

*Assoc. of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) (Kavanaugh, J.).

On March 29, 2019 (*see* **Exhibit 1**), the Court in the DIRECTV Action certified a nationwide non-customer class consisting of:

> All persons residing within the United States who, within four years prior to and after the filing of this action, received a non-emergency telephone call(s) from DIRECTV and/or its third-party debt collectors regarding a debt allegedly owed to DIRECTV, to a cellular phone through the use of an artificial or prerecorded voice, and who has not been a DIRECTV customer at any time since October 1, 2004.

After the court certified the class, Plaintiffs embarked on discovery of the third-party vendors in preparation for trial. As part of that process, Plaintiffs served a deposition subpoena with attached document requests on ERC on October 7, 2020, attached as **Exhibit 2**. On October 20, 2020, ERC, via counsel, objected in writing to the document requests in the subpoena, attached as **Exhibit 3**. Upon receiving that objection, Plaintiffs' counsel and ERC's counsel met-and-conferred as to both the deposition and the document requests, with Plaintiffs proposing, as a compromise, a comprehensive affidavit from ERC in lieu the deposition subpoena. ERC rejected Plaintiffs' compromise, referencing a prior declaration of ERC provided to Plaintiffs. *See* **Exhibit 4** (email from counsel for ERC); **Exhibit 5** (Declaration of Jason Davis). But in any event, it became clear in discussions with ERC that ERC has (or has access to) numerous call records that go to the heart of the underlying case. These call records identify class members who received allegedly illegal calls—and are not available from any other source.

On January 7, 2021, Plaintiffs served a meet-and-confer letter on ERC regarding its production obligations with respect to a subset of ERC's call records, narrowing Plaintiffs' requests substantially. **Exhibit 6**. After several months of silence from ERC, Plaintiffs sought to meet-and-confer regarding this motion to compel. It was at this point, on March 8, 2021, that ERC responded, and during the subsequent meet-and-confer process, ERC agreed to produce documents pursuant to the narrowed requests. **Exhibit 7**.

Notwithstanding those representations, to date ERC has not produced any documents pursuant to the subpoena and has stopped responding to Plaintiffs' request for information about the agreed-to production, almost two months after agreeing to do so. **Exhibit 8.** This Court's guidance is therefore necessary.

## III.   Argument

Rule 45 provides that "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(g). "Rule 37 generally permits a party to move to compel discovery, and Rule 45(c)(2)(B)(i), more specifically, entitles the party serving a subpoena to move the court for an order compelling production." *Leor Exploration & Prod., LLC v. Aguiar*, Case No. 09-60136-CIV, 2013 U.S. Dist. LEXIS 1087, at * 16 (S.D. Fla. Jan. 2, 2013). In addition, "it is well-established that courts have inherent power to enforce compliance with their lawful

orders through civil contempt." *Melikhov v. Drab*, Case No. 2:19-cv-248, 2019 U.S. Dist. LEXIS 161435, at * 17 (M.D. Fla. July 1, 2019); *Pub. Serv. Co. v. Portland Nat. Gas*, 218 F.R.D. 361, 362 n.2 (D.N.H. 2003) ("[S]ubpoenas . . . are court orders. A failure to comply with a subpoena thus can be punished as a contempt of court.").

ERC has not responded to the lawfully served subpoena, even after Plaintiffs limited the scope of the requests. Indeed, ERC represented that it would produce the documents pursuant to the narrowed requests, and thus can raise no good faith objection to the scope of the requests at this point. ERC should be compelled to comply and produce the requested documents.

### A. Outbound Call Data (Request No. 5)

Subpoena Request No. 5 requests:

DOCUMENTS—whether produced or unproduced—in your possession, custody or control, or that are within your practical ability to obtain, that contain records of the phone calls [ENHANCED RECOVERY] made on behalf of DIRECTV between December 2009 to the present, including records of: (a) the phone numbers [ENHANCED RECOVERY] attempted to call, (b) the names of each intended call recipient, (c) the account numbers or other identification numbers for each intended call recipient, (d) the address of each intended call recipient, (e) the date of the calls; (f) the time of the calls; (g) the duration of each call, (h) the CALL RESULTS, including whether each call was made to the wrong or incorrect number; (i) the DIALING MODE used for each call; (j) the DIALER used to make each call; (k) where YOU obtained the telephone numbers called; (l) any pre-recorded message or interactive voice messaging that was used on the calls (including the file names of any audio files used), (m) the name of the CALLING CAMPAIGN for each call, (n) the phone number(s) that would appear on the call recipient's caller ID, and (o) how you determined YOU had consent to call each person and telephone number using a DIALER or a prerecorded voice or artificial voice messages, and whether that consent was revoked.

ERC objected to this request on the basis that it sought information relating to calls that were outside of the class definition. *See* Exhibit 3, at 1-2. In light of those objections, Plaintiffs limited this request significantly. Plaintiffs now seek *only* data generated from the LiveVox Blast and LiveVox RPC systems (the systems that use prerecorded messages) used by ERC, and only for the period between June 13, 2012 (the beginning of ERC's relationship with DIRECTV) and January 18, 2016 (the end date of ERC's use of the the LiveVox Blast and LiveVox RPC systems on behalf of DIRECTV). *See* Exhibit 6, at 3. In doing so, Plaintiffs request data from *only* those systems that made pre-recorded calls, *only* during the time period in which pre-recorded calls were made, and only calls that ERC made on DIRECTV's behalf. The request is thus responsive to ERC's objections, and targeted only to relevant and properly discoverable information.

TCPA cases routinely require the production of class-wide call data. *See, e.g., Martin v. Global Mktg. Research Servs.*, 2015 U.S. Dist. LEXIS 140530, *9-13 (M.D. Fla. 2015) (compelling defendant to comply with interrogatories 17 and 20 seeking class member names, telephone numbers, and dates and times of calls); *Sewell v. D'Alessandro & Woodyard*, 2011 U.S. Dist. LEXIS 38664, *8-9 (M.D. Fla. Mar. 30, 2011) (granting motion to compel, holding "the purpose of class discovery is to determine who constitutes the members of the class"); *see also Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243-44 (N.D. Ohio

2017) (explaining that, for decades, courts have recognized a "party can be required to design a computer program to extract the data from its computerized business records," and ordering defendant to either write the program or produce its database so plaintiff's expert could write the program); *Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531, *23 (N.D. Ill. 2016) ( "call data is relevant, and thus produced as standard practice" in cases where the data is sought from alleged caller).

Not only are these records routinely compelled from defendants, but similar records are routinely required to be produced by third parties. *See Buja v. Novation Capital, Ltd. Liab. Co.*, 2016 U.S. Dist. LEXIS 187456, *7, *10-11 (S.D. Fla. Dec. 27, 2016) (TCPA case requiring compliance with subpoena by ordering defendant to produce a copy of its entire system so plaintiff could identify responsive data defendant refused to produce); *Lucas v. Jolin*, No. 1:15-cv-108, 2016 U.S. Dist. LEXIS 139100, at *13 (S.D. Ohio Oct. 6, 2016) (granting motion to compel non-party to respond to the subpoena seeking records); *Key v. Integrity Surveillance Sols., Inc.*, 2015 U.S. Dist. LEXIS 163929, at *10-11 (E.D. Mich. Dec. 8, 2015) (compelling production of "a report or spreadsheet containing phone records during the relevant period of time for calls made to the phone numbers belonging to Plaintiffs and similarly situated consumers"); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 283-84 (N.D. Cal. 2015) (ordering TCPA defendant to reconstruct archived account note data into categories of information sought for each

call, including phone number, date, time, dialer system and mode used, and the result of the call including notations made).

In fact, most of these cases uniformly ordering production of call data involved requests for such data *prior* to class certification. Their holdings are all-the-more relevant where, as here, the district court has already certified a class—and the data is required to provide Rule 23 notice and adjudicate the claims of class members called by ERC.

Along with the call data itself, Request No. 5 also obligates ERC to produce information regarding "where [ERC] obtained the telephone numbers called" and "how you determined [ERC] had consent to call each person and telephone number using a DIALER or a prerecorded voice or artificial voice messages, and whether that consent was revoked." Information regarding consent to receive calls is generally discoverable in TCPA cases. *See Bellenger v. Accounts Receivable Mgmt.*, Case No. 19-cv-60205, 2019 U.S. Dist. LEXIS 153672 at *16-17 (S.D. Fla. Sept. 10, 2019) ("if the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely"); *Henderson v. United Student Aid Funds, Inc.*, Case No. 13-cv-1845, 2015 U.S. Dist. LEXIS 107342 at *21-22 (S.D. Cal. July 28, 2015) ("Plaintiff's request for documents and information on prior express consent is relevant because USA Funds raised this defense in its answer and argues in its opposition that Plaintiff consented

to the calls."); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 U.S. Dist. LEXIS 136819, *9 (N.D. Ill. Sept. 24, 2013) (in a TCPA class action, "the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified").

The production of such information is routine. DIRECTV used dozens of vendors during the class period. Every single other vendor who retained call records has produced them in this case. In fact, the court in the DIRECTV Action set a deadline for "DIRECTV and its third-party debt collectors to provide relevant call data to Class Counsel to assist in identifying those who may be members of the certified class" for March 6, 2020. Dkt. 302, at 1. Only ERC seems to believe that it need not comply with its obligations under the Federal Rules.

Moreover, these records are particularly relevant to the DIRECTV Action. It is undisputed that the purpose of the calls at issue was to collect on debts originating from DIRECTV's customers. The TCPA allows a debt collector or its agents to make automated calls, including automated calls using pre-recorded messages, only to those consumers *who have provided prior express consent* to receive such calls. *See* 47 U.S.C. § 227(b)(1)(B) ("It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent

10

of the called party. . . ."); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 564-65 (2008) ("2008 Declaratory Ruling"), at ¶ 10 ("[P]rior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.") The class certified in the DIRECTV Action is limited to those individuals who received calls that were made *to non-customers*. These individuals, by definition, could not have provided prior express consent. Indeed, the leading case regarding calls to non-customers *involved ERC*. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) ("Consent to call a given number must come from its current subscriber. Enhanced Recovery implicitly acknowledges this by saying that the current subscriber can rescind any earlier consent to call Cell Number. But this really means that Customer's authority to give consent, and thus any consent previously given, lapses when Cell Number is reassigned."); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014) (adopting the reasoning of *Soppet*). Therefore, the facts establish that ERC has responsive call records and the law establishes that such call records are unquestionably relevant to this matter.

    Plaintiffs have requested a narrow slice of information that is specifically

tailored to address ERC's objections. There is no good reason for ERC to refuse to produce this data. ERC has not even proffered a reason. Instead, it has gone silent for weeks after agreeing to produce documents responsive to the narrowed requests. Therefore, the Court should order ERC to comply with the subpoenas and/or issue a rule to show cause for its failure to comply.

### B. Process Notes (Request No. 3)

Subpoena Request No. 3 requests:

Testimony and Documents: The manner in which YOU or any THIRD PARTY acting on your behalf made outbound telephone calls, including: (a) YOUR use of prerecorded voice or artificial voice messages; (b) the manner in which YOU dialed telephone numbers, including a description of YOUR use of any DIALERS and the settings YOU used on any DIALERS; (c) how YOU used different CALLING CAMPAIGNS, including a description of the parameters and guidelines for each CALLING CAMPAIGN, (d) how YOU determined that YOU had consent to call each phone number that YOU called, and (e) YOUR process for selecting which phone numbers to call in different manners, including any efforts to identify cellular telephone numbers, skip-traced phone numbers, or any other class of numbers for special treatment.

ERC objected to this request on the same basis as it did to the call data—that it was outside of the scope of the class. *See* Exhibit 3, at 1-2. Plaintiffs thus limited this request in the same way as the call data—now requesting only data from the LiveVox Blast and LiveVox RPC systems, and only for the period between June 13, 2012 and January 18, 2016. *See* Exhibit 6, at 3. In addition, Plaintiffs limited the scope of the request to include only:

- Any codes that were associated with those calls made by those systems

12

- in that time period; and
- Any account notes from those calls made by those systems in that time period.

These two highly-targeted requests relate to the same issue as the consent information requested under Request No. 5—separating out the non-customers of DIRECTV (who are members of the certified class) from the customers (who are not). DIRECTV required its vendors to provide records of the calls made on its behalf through its RMS system. Exhibit 1, at 2. Included in the RMS data were codes which required ERC to identify calls that it made to "Bad Phones." Likewise, the account notes may contain information regarding calls made to such "Bad Phones"—i.e. calls made to individuals who were not who ERC was intending to reach. In other words, these records indicate calls made to members of the certified class.

As with Request No. 5, the information requested is targeted to relevant and important information.

### C. Communications with DIRECTV (Request No. 6)

Subpoena Request No. 6 requests "[f]rom December 2009 to the present, all COMMUNICATIONS between [ERC] and DIRECTV CONCERNING OR RELATING TO [ERC's] outbound calls on behalf of DIRECTV." ERC objected to this request as to relevance in the manner discussed above, as well as on the basis of the "the Joint Defense and Work Product Privileges." *See* Exhibit 3, at 2. Plaintiffs

limited the request by time (between June 13, 2012 and January 18, 2016) and by scope (only communications concerning the calls stemming from the LiveVox Blast and LiveVox RPC systems). In addition, Plaintiffs agreed to limit the communications to be produced to only:

- The RMS data provided to DIRECTV in connection with the calls made by those specific LiveVox technologies within that timeframe; and
- All communications and documents relating to visits by DIRECTV personnel to ERC facilities within that timeframe.

Plaintiffs allege that DIRECTV is vicariously liable for any calls ERC placed on its behalf. *See* 2008 Declaratory Ruling, 23 FCC Rcd. At 565, at ¶ 10 ("Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call."); *see also Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1254-55 (11th Cir. 2015) (finding vicarious liability on the part of the principal for TCPA violations). As such, evidence that goes to DIRECTV's knowledge of ERC's calling activities that reached non-customers is relevant. *See Strauss v. CBE Group, Inc.*, 173 F. Supp.3d 1302, 1310 (S.D. Fla. 2016) (denying summary judgment on behalf of the plaintiff in a TCPA case, *inter alia*, because plaintiff failed to establish that the debt holder "knew that CBE was violating the TCPA and failed to stop it.").

As discussed above, the RMS data contains information demonstrating not only that ERC made calls to non-customers of DIRECTV, but *which* calls were in

fact made to those non-customers. In transmitting this data to DIRECTV, ERC was providing actual knowledge of TCPA violations to DIRECTV. This information is directly relevant to the question of DIRECTV's vicarious liability for ERC's calls. Likewise, DIRECTV personnel met in-person periodically with ERC to review and discuss ERC's calling program on DIRECTV's behalf. Insofar as ERC informed DIRECTV that it was making calls to non-customers, or provided DIRECTV with evidence or information through which DIRECTV could determine that ERC was making calls to non-customers, that too would bear directly on the liability for those calls.

The information and communications requested are important to the DIRECTV action. The Court should order ERC to comply with the subpoenas.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order compelling Enhanced Recovery Company, LLC to comply with the subpoenas served on it, as limited by Plaintiffs, in the underlying DIRECTV Action, directing it to show cause why it should not be held in contempt for failing to respond to the subpoenas in the first instance, and awarding Plaintiffs such additional relief as the Court deems just and proper.

Dated: July 12, 2021  Respectfully Submitted,

By: /s/ *Michael L. Greenwald*
Michael L. Greenwald

Florida Bar No. 761761
GREENWALD DAVIDSON RADBIL PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
mgreenwald@gdrlawfirm.com

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice* to be filed)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
mboyle@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 2021, I caused a copy of the foregoing *Motion to Compel Compliance with Subpoenas for Documents Issued by United States District Court for the Central District of California* to be served upon all counsel of record via email and US Mail upon counsel for Defendant.

/s/ Michael L. Greenwald

90067_3